UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| USSC HOLDINGS CORP. et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>TK PRODUCTS, LLC et al.,<br><br>　　　　Defendants. | 3:16-cv-00398-RJC-WGC<br><br>**ORDER** |

This case arises out of the alleged breach of a licensing agreement purportedly granting Plaintiffs USSC Holdings Corp., Music City Fire Company, Robert Buckley, and Steve Paladino ("Plaintiffs") the right to manufacture and sell the inventions of Defendants TK Products, LLC, Trent Farrer, and Kurt Bauer ("Defendants"). Now pending before the Court are: Plaintiffs' Motion to Seal Portions of their Complaint (ECF No. 2); Defendants' Motion to Dismiss or Stay for Action Pending (ECF No. 17); and Plaintiffs' Motion to Seal Portions of their Opposition to the Motion to Dismiss (ECF No. 22). The Court grants the Motions to Seal. (ECF Nos. 2, 22.) For the reasons given herein, the Court denies the Motion to Dismiss or Stay. (ECF No. 17.)

**I.　FACTS AND PROCEDURAL HISTORY**

On or about July 30, 2014, Plaintiff Steve Paladino, on behalf of Plaintiff USSC Holdings ("USSC"), reached out to Defendant Trent Farrer to express USSC's interest in manufacturing and selling Farrer's "water fire pit" invention. (Compl. ¶¶ 16–17, ECF No. 1.) Some months

prior, USSC had begun developing gas-fueled fire display products that react to and synchronize with music, and was interested in acquiring a license to take Farrer's invention to market. (*Id.* at ¶¶ 15–17.) After several months of discussion, in December 2014, Farrer and fellow inventor Kurt Bauer entered into a licensing contract ("License Agreement" or "Agreement") with USSC. (*Id.* at ¶¶ 19–21.) The Agreement originally included licenses to Farrer's and Bauer's water fire pit and "tiki torch" inventions, and was later amended to add a broader license to other "fire pit" products as well. (*Id.* at ¶¶ 21–26.)

In May 2015, Bauer and Farrer informed USSC that they had not conducted a prior art search before commencing the patent application process for their inventions. (*Id.* at ¶ 30.) Soon thereafter, USSC discovered that a U.S. patent for a "Music-Reactive Fire Display" (U.S. Patent No. 8,823,714) ("LiveSpark Patent") and a published patent application for a "Music-Reactive Fire Display" (Publication No. 2015/0047627) were owned by a company called LiveSpark, Inc. ("LiveSpark"), out of Las Vegas. (*Id.*) USSC asserts that the parties tried to find a "workaround" for their products that would not infringe on the LiveSpark Patent or the published application, but were ultimately unsuccessful. (*Id.*)

At some point during their dealings, USSC discovered that Bauer and Farrer had not patented their inventions, and had in fact abandoned a patent application for a "System and Method for Entertaining and Producing a Fire Show" (Published Patent Application No. US 20100279237 A1) on or about January 13, 2014. (*Id.* at ¶ 18.) Prior to executing the License Agreement, on or about September 22, 2014, Bauer and Farrer sent a draft provisional patent application to USSC pertaining to the water fire pit. (*Id.* at ¶ 20.) USSC later concluded that this draft application "incorporated verbatim much of what was contained in the Published Application" that had been abandoned in January 2014. (*Id.*) Furthermore, USSC alleges that, as of June 25, 2015, after efforts to work around the LiveSpark Patent had failed, Bauer and Farrer

"were not and had not been diligently prosecuting their pending patent application." (*Id.* at ¶ 32.) USSC reached the conclusion that Bauer and Farrer had misrepresented the status of their patent application all along, and in light of the LiveSpark Patent would be unable to obtain patent protection for the inventions covered by the License Agreement. (*Id.* at ¶¶ 28, 32.)

Accordingly, on or about June 28, 2015, USSC unilaterally terminated the Agreement. (*Id.* at ¶ 33.) The parties remained in contact, however, and in August 2015 USSC represented to Bauer and Farrer that it was still willing to find a way to commercialize their inventions. (Reply 3, ECF No. 25.) Around this time, Bauer and Farrer determined to enter into a non-disclosure agreement with USSC to protect the product information shared with USSC over the course of the previous year. (*Id.*) Bauer and Farrer also sought assurances that USSC was not working with LiveSpark. (*Id.*) USSC never signed the non-disclosure agreement, and never responded to the inquiry regarding its relationship with LiveSpark. (*Id.*)

In February 2016, Bauer and Farrer initiated mediation in Clark County, Nevada. (*Id.* at 4.) In response, USSC took the position that it would mediate, but that the License Agreement required that mediation take place in Washoe County. (Resp. 3, ECF No. 21.) Counsel for Bauer and Farrer then represented that his clients would likely agree to mediate in Washoe County. (*Id.*) Around this time, however, Bauer and Farrer learned that Paladino and Robert Buckley, under the newly formed Music City Fire Company ("Music City"), were marketing a line of sound-reactive fire display products in conjunction with LiveSpark. (Reply 4, ECF No. 25; Mot. Dismiss 3–4, ECF No. 17.)

Therefore, on May 9, 2016, Defendant TK Products ("TK") filed a lawsuit against Plaintiffs in the U.S. District Court, District of Oregon (the "Oregon Action").[1] *TK Products,*

---

1 TK is a limited liability company whose sole members are Bauer and Farrer. (Or. Compl. ¶ 1, ECF No. 17-2.) On April 29, 2016, Bauer and Farrer assigned to TK all rights to the "claims, products, and agreements" described in the Oregon Action. (*Id.* at ¶ 3.)

*LLC v. Buckley*, Case No. 3:16-cv-00803-SI (D. Or. May 9, 2016). In the Oregon Action, TK asserts claims for misappropriation of trade secrets, intentional interference with business relations, and unjust enrichment. On July 1, 2016, Plaintiffs filed the instant action in this Court (the "Nevada Action"). Plaintiffs allege breach of contract and breach of the implied covenant of good faith and fair dealing, and seek a declaratory judgment that (1) the License Agreement was rescinded based on unilateral mistake, (2) Plaintiffs did not misappropriate trade secrets, (3) Plaintiffs did not intentionally interfere with business relations, and (4) Plaintiffs were not unjustly enriched. TK now moves to dismiss or stay the Nevada Action under the first-to-file rule. Plaintiffs have opposed, arguing that this Court is the only proper forum for all claims asserted in both actions, because the claims arise under the License Agreement, and the Agreement's forum selection clause mandates adjudication in a state or federal court in Washoe County, Nevada. TK argues that the claims asserted in the Oregon Action may properly be adjudicated in the District of Oregon, because they do not arise under the License Agreement, and are therefore not subject to its forum selection clause.

## II. LEGAL STANDARDS

"The first-to-file rule allows a district court to [dismiss or] stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015). The Ninth Circuit recently articulated the applicable standards succinctly:

> The first-to-file rule is intended to "serve the purpose of promoting efficiency well and should not be disregarded lightly." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). When applying the first-to-file rule, courts should be driven to maximize "economy, consistency, and comity." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999). The first-to-file rule may be applied "when a complaint involving the same parties and issues has already been filed in another district." *Alltrade*, 946 F.2d at 625. Thus, a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues. *See id.*

*Id.* at 1239–40 (brackets and parentheticals omitted). With respect to the requisite level of similarity between the cases, the parties and issues need only be "substantially similar," not identical. *See id.* at 1240–41.

### III. ANALYSIS

Under circumstances like those presented in this case, application of the first-to-file rule is generally appropriate. The Oregon Action was filed before the Nevada Action. The parties in both cases are nearly identical, the only difference being the joinder of individual defendants Bauer and Farrer in the Nevada Action, whereas TK is the sole Plaintiff in the Oregon Action. However, Bauer and Farrer are the sole members of TK, and TK is the sole assignee of Bauer's and Farrer's "rights to the claims, products, and agreements described in [the Oregon Action]." (Or. Compl. ¶¶ 1–3, ECF No. 17-2.) Moreover, there is certainly "substantial overlap" regarding the issues raised in both cases. *See Kohn*, 787 F.3d at 1241. TK filed the Oregon Action alleging misappropriation of trade secrets, intentional interference with business relations, and unjust enrichment. Plaintiffs then filed the Nevada Action seeking a declaratory judgment on the same three claims. Notwithstanding Plaintiffs' additional claims expressly based on the License Agreement, the parties have asked two different courts to decide, in significant part, the same issues. This would clearly run contrary to the interests of economy, consistency, and comity. Accordingly, the facts presented here satisfy the baseline test for applying the first-to-file rule.

#### a. Plaintiffs' Forum Shopping Argument

Of course, the Court has discretion to depart from the first-to-file rule for reasons of equity. "The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit, and forum shopping." *Alltrade*, 946 F.2d at 628 (citations omitted). Plaintiffs argue the Court should decline to follow the first-to-file rule because the Oregon Action was anticipatory, and improperly motivated by forum-shopping.

(Resp. 6–7, ECF No. 21.) The Court disagrees. The briefs and supporting documents indicate that at the time TK filed the Oregon Action, TK and USSC were already engaging in discussions to mediate their dispute in Washoe County pursuant to the terms of the License Agreement. (February 8–25, 2016 Email Chain, ECF No. 21-2.) In fact, it was TK that initiated mediation in Nevada, albeit originally in Clark County. (*Id.* at 5–6.) There is also no indication that USSC had expressed an intent to file an action in Nevada or anywhere else. *See Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1098 (N.D. Cal. 2006) ("In order for a court to find that the initial suit was anticipatory, the plaintiff in the first action must have been in receipt of specific, concrete indications that a suit by defendant was imminent.").

Furthermore, even after filing the Oregon Action, TK's counsel informed Plaintiffs that TK would still be "moving forward with the [Nevada] mediation on the license agreement." (May 9–12, 2016 Email Chain 1, ECF No. 21-3.) TK had taken the position that the Oregon Action did not cover any claims arising under the License Agreement, explaining that: "The only claim arguably subject to the mediation clause or Nevada's jurisdiction [is] a claim under the license agreement, and we intend to mediate that claim in Washoe County." (*Id.*) Regardless of whether TK correctly interpreted the law in concluding the claims asserted in the Oregon Action do not arise under the License Agreement—which the Court will address shortly—it is evident the Oregon Action was not a preemptive attempt to avoid the jurisdiction of Nevada's courts, because even after filing the Oregon Action TK conceded that a claim arising under the License Agreement may nonetheless be subject to such jurisdiction. Therefore, the Court finds that the Oregon Action was not a result of improper forum shopping.

/ / /

/ / /

/ / /

### b. Forum Selection Clause

However, Plaintiffs also argue that the License Agreement's forum selection clause applies to all of the claims asserted in both the Oregon and Nevada Actions, and accordingly only this Court can properly adjudicate the claims.

As a preliminary matter, the Court finds that the forum selection clause in the License Agreement must be enforced. "A contractual forum selection clause is 'prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762, 763 (9th Cir. 1989), quoting *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972). "[W]here venue is specified with mandatory language the clause will be enforced." *Id.* at 764. Here, the forum selection clause mandates venue in "the applicable state or federal courts of Nevada" in Washoe County. (Resp. 5, ECF No. 21.) Furthermore, no party has actually asserted that the forum selection clause should not be enforced; rather, TK argues the forum selection clause is not applicable to the claims asserted in the Oregon Action because they do not arise under the License Agreement. Therefore, this Court will enforce the forum selection clause.

The License Agreement makes the forum selection clause applicable to all disputes arising under the Agreement. (*Id.*) Half of the claims alleged in the Nevada Action clearly arise under the License Agreement: breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment of rescission of contract based on unilateral mistake. Accordingly, these claims must be adjudicated in Nevada, and the Court will not dismiss them.

On the other hand, "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). Therefore, the Court must determine whether the resolution of the claims asserted in the Oregon Action will require interpretation of the

License Agreement. *See id.* If so, they are subject to the forum selection clause and must be litigated in Nevada.

### i. Misappropriation of Trade Secrets

To establish a claim of trade secret misappropriation under Oregon law, "a plaintiff must demonstrate that (1) the subject of the claim qualifies as a statutory trade secret; (2) the plaintiff employed reasonable measures to maintain the secrecy of its trade secrets; and (3) the conduct of the defendants constitutes statutory misappropriation."[2] *Vesta Corp. v. Amdocs Mgmt. Ltd.*, 80 F. Supp. 3d 1152, 1163 (D. Or. 2015). TK has not asserted that the terms of the License Agreement prohibited Plaintiffs from divulging trade secrets. Rather, TK argues that Bauer and Farrer relied, in part, on the *fact* of the License Agreement as an assurance that Plaintiffs would not disclose its trade secrets. In other words, by signing the License Agreement, USSC and Bauer and Farrer entered into a business relationship under which they had a shared economic interest in maintaining the confidentiality of trade secrets. Therefore, based on the relationship created by the License Agreement, as well as on other representations made by USSC in discussions predating the Agreement, Bauer and Farrer shared trade secrets with USSC, which Plaintiffs later misappropriated.

At first blush, TK's theory appears not to arise from the contract. After all, TK only argues that the existence of the License Agreement is material, and does not rely on its contents. However, an essential element of TK's claim is establishing that it "employed reasonable measures to maintain the secrecy of its trade secrets." Making a determination on this element will likely require a review and interpretation of the Agreement. For example, does the

---

2  "Claims arising in tort are not ordinarily controlled by a contractual choice of law provision. Rather, they are decided according to the law of the forum state." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992) (citation omitted). TK has asserted statutory and tort claims under Oregon law and in an Oregon forum. Accordingly, the Court applies Oregon law in analyzing the claims.

Agreement contain non-disclosure or confidentiality provisions relative to trade secrets? Does it contain other provisions which may be construed to prohibit Plaintiffs from divulging trade secrets? In short, was the Agreement itself a reasonably sufficient measure to maintain the secrecy of the trade secrets at issue?

TK has expressly alleged that Bauer and Farrer relied, in part, on the License Agreement when making the decision to share detailed product information with USSC. (Or. Compl. ¶ 27, ECF No. 17-2.) This raises the issue of whether it was reasonable for them so to rely, which will require a construction of the Agreement itself. Accordingly, the Court finds that TK's trade secret misappropriation claim is subject to the Agreement's forum selection clause. *See Manetti-Farrow*, 858 F.2d at 514.

### ii. Intentional Interference with Business Relations

To establish a claim of intentional interference with business relations under Oregon law, "a party must allege: (1) the existence of a valid business relationship or expectancy, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to economic relations, and (6) damages." *Uptown Heights Associates Ltd. P'ship v. Seafirst Corp.*, 891 P.2d 639, 646 (Or. 1995) (en banc). In the Oregon Action, TK has asserted that had it not been for Plaintiffs' misappropriation of its trade secrets, it could have entered into an agreement with a third party to manufacture and sell its products. (Or. Compl. ¶¶ 55–57, ECF No. 17-2.)

This claim is also wrapped up in the terms of the License Agreement. Following USSC's termination of the Agreement, Bauer and Farrer would have been free to license their products to another manufacturer immediately. Indeed, as long as their inventions don't infringe the LiveSpark Patent—or any other patent—they can still take their products to market now.

Therefore, what TK has lost, if anything, is the "first-to-market" advantage it hoped to obtain. However, to prevail on this claim, TK will have to establish that the alleged interference by Plaintiffs was "wrongful by some measure beyond the fact of the interference itself." *Uptown Heights*, 891 P.2d at 647, quoting *Straube v. Larson*, 600 P.2d 371, 374 (Or. 1979). TK asserts that the wrongfulness is in the misappropriation of trade secrets. The Court has already concluded above that the misappropriation inquiry requires interpretation of the License Agreement. Another significant question the Court anticipates in this regard is whether USSC's termination of the Agreement was itself wrongful (i.e., in violation of the Agreement). It will be necessary to interpret the Agreement to make this determination. If USSC was within its rights in terminating the Agreement, it may be difficult for TK to make out its case of wrongfulness independent of the allegation of trade secret misappropriation.

Therefore, the Court finds that TK's intentional interference claim is also subject to the Agreement's forum selection clause. *See Manetti-Farrow*, 858 F.2d at 514.

### iii.  Unjust Enrichment

Lastly, the Oregon Action includes a claim of unjust enrichment. TK has alleged that Bauer and Farrer shared trade secrets with Plaintiffs Paladino, Buckley, and Music City, and that these Plaintiffs derived, accepted, and retained benefits from the misappropriation and wrongful disclosure of those trade secrets. (Or. Compl. ¶¶ 64–66, ECF No. 17-2.) This claim involves the same issues as the trade secret misappropriation claim, and thus involves an interpretation of the License Agreement to the same extent. Accordingly, this claim is equally subject to the forum selection clause. *See Manetti-Farrow*, 858 F.2d at 514.

In sum, the Court finds that all the claims asserted in both the Oregon and Nevada Actions either arise directly under the License Agreement or require an interpretation of the Agreement, and therefore all claims are subject to the forum selection clause. Accordingly, this

Court declines to follow the first-to-file rule in this instance, and will not dismiss any of the claims asserted here, because the District of Oregon is not a proper forum for the claims alleged in the Oregon Action. All the parties' claims must be adjudicated in Nevada. As such, there is no reason to dismiss or stay this proceeding to await any ruling from the District of Oregon.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to Seal (ECF Nos. 2, 22) are GRANTED. The relevant documents have already been filed under seal so no further action is required by the Clerk of the Court.

IT IS FURTHER ORDERED that the Motion to Dismiss or Stay for Action Pending (ECF No. 17) is DENIED.

IT IS SO ORDERED December 6, 2016.

_____
ROBERT C. JONES
United States District Judge